

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-30-2005

# Kay Berry Inc v. Taylor Gifts Inc

Precedential or Non-Precedential: Precedential

Docket No. 04-3809

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Kay Berry Inc v. Taylor Gifts Inc" (2005). *2005 Decisions.* Paper 578.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/578

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-3809
_____

KAY BERRY, INC.

Appellant

v.

TAYLOR GIFTS, INC.;
BANDWAGON, INC.


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil No. 03-1305)
District Judge: Honorable Donetta W. Ambrose

_____

Argued May 3, 2005

BEFORE: McKEE, VAN ANTWERPEN and WEIS, Circuit
Judges

(Filed: August 30, 2005)

Andrew B. Katz (Argued)
Fox, Rothschild, O'Brien & Frankel, LLP
2000 Market Street
10th Floor
Philadelphia, PA 19103

William L. Stang
Fox, Rothschild, O'Brien & Frankel, LLP
625 Liberty Avenue
29th Floor
Pittsburgh, PA  15222

*Counsel for Appellant*

William E. Hilton (Argued)
Gauthier & Connors, LLP
225 Franklin Street
Suite 3300
Boston, MA  02110

John R. McGinley, Jr.
Eckert, Seamans, Cherin & Mellot, LLC
600 Grant Street
44th Floor
Pittsburgh, PA  15219

*Counsel for Appellees*

_____

OPINION

_____

VAN ANTWERPEN, <u>Circuit Judge</u>

Before us is an appeal from an order granting summary judgment in favor of the defendant-Appellees on a copyright infringement claim. Appellant Kay Berry, Inc. ("Kay Berry") claims that Appellees Taylor Gifts, Inc. ("Taylor") and Bandwagon, Inc. ("Bandwagon") infringed its copyright on its sculptural work – a garden rock cast with a poem found in the public domain. The United States District Court for the Western District of Pennsylvania granted summary judgment after determining that Kay Berry's copyright registration was invalid and that the sculptural work was not entitled to copyright protection. We will reverse.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Kay Berry designs, manufactures, markets and sells "Garden Accent Rocks," which it describes as decorative, cement-cast, outdoor sculptures typically resembling rocks or stones, inscribed with writings. On July 7, 1997, Kay Berry applied for a copyright registration for its entire line of Garden Accent Rocks. It provided its Garden Accent Rock Catalog (the "Catalog") as the document specimen for the registration. The Catalog identified each sculpture by number and featured a description and photograph of each

3

individual work.  The United States Copyright Office issued Kay Berry a Copyright Registration Certificate (the "Certificate") with an effective date of July 1, 1997.  The Certificate identified the scope of the Certificate's subject matter as simply "[s]culptural works with design and text."

One of Kay Berry's best-selling Garden Accent Rocks is Sculpture No. 646, a rectangular object having a stone-like appearance and a verse inscribed on the face.  The verse appears in five lines, inscribed in a right-leaning font with the first letter of each word capitalized:

*If Tears Could Build A*

*Stairway, And Memories*

*A Lane, I'd Walk Right Up*

*To Heaven And Bring*

*You Home Again*

(Appellant App. at 8.)

During 2003, Bandwagon began supplying to Taylor, and Taylor began marketing and selling, a "Memory Stone," which was similar to Kay Berry's Sculpture No. 646.  Like Sculpture No. 646, the Memory Stone was a rectangular object with a stone-like appearance featuring the exact same verse that appears on Sculpture No. 646.  The Memory Stone's verse was also laid out in the same five-line format,

each word also began with a capital letter, and the entire verse also appeared in a right-leaning font.

Kay Berry sued Taylor and Bandwagon for copyright infringement and moved for a preliminary injunction prohibiting the Appellees from selling the Memory Stone. On December 8, 2003, a United States Magistrate Judge issued a Report and Recommendation suggesting that the District Court deny Kay Berry's motion. The District Court adopted the Magistrate's Report and Recommendation, without change, in an order dated February 23, 2004.

At about the same time, on February 6, 2004, Appellees had filed an amended motion for summary judgment on the infringement claim. On August 2, 2004, the Magistrate issued a Report and Recommendation suggesting that the District Court grant the motion. On August 30, 2004, the District Court adopted the Magistrate Judge's Report and Recommendation as its own opinion and granted summary judgment in favor of Appellees. This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and employ the same analysis required of the District Court to determine whether there are any issues of material fact that would enable the nonmoving party to prevail. Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). Summary judgment

5

is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, we view all evidence and consider all reasonable inferences in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## III. ANALYSIS

"To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002). In granting summary judgment in favor of Appellees, the District Court relied on a Report and Recommendation which concluded that: (1) Kay Berry did not have a valid registration over its multiple works because they were not sufficiently related, (2) Sculpture No. 646 contained no copyrightable subject matter, and (3) Sculpture No. 646 embodied an expression that was inseparable from an underlying idea. For the reasons set forth below, we will reverse.

### A. Kay Berry's Registration

We begin by addressing the validity of Kay Berry's copyright registration. According to 17 U.S.C. § 411(a), "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this

title." See Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 354 F.3d 112, 115 (2d Cir. 2003); Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 283 (4th Cir. 2003). Kay Berry claims that Sculpture No. 646 was properly registered under Certificate of Registration VA857-542, which covers "Garden Accent Rocks," described as "[s]culptural works with design and text." Along with Registration VA857-542, Kay Berry deposited its Garden Accent Rocks catalog, which featured pictures and descriptions of more than one hundred sculptures, including Sculpture No. 646. Kay Berry claims that this registration covers Sculpture No. 646 along with all of the other works featured in the catalog. The District Court disagreed, reasoning that the individual works featured in the catalog were not validly registered because they were not sufficiently related to each other to qualify for registration as a group of works as required by 17 U.S.C.§ 408(c)(1). We believe that this reasoning improperly ignored the governing copyright registration regulations and caused the District Court to evaluate Kay Berry's registration under the incorrect statutory provision.

### 1. *Group Registration*

Initially, Kay Berry argued that its Garden Accent Rocks were properly registered as a group of related works pursuant to 17 U.S.C. § 408(c)(1). The statute states in relevant part:

> The Register of Copyrights is authorized to specify by regulation the administrative classes into which works are to be placed for purposes of deposit and

7

registration, and the nature of the copies or phonorecords to be deposited in the various classes specified. The regulations may require or permit, for particular classes . . . a single registration for a group of related works.

17 U.S.C. § 408(c)(1) (2005). Relying on Behnam Jewelry Corp. v. Aron Basha Corp., 45 U.S.P.Q.2d 1078, 1087-88 (S.D.N.Y. 1997), Kay Berry claimed that when Congress enacted § 408(c), it specifically attempted to liberalize the copyright laws so as to allow a group of works to be registered together, under a single registration, as long as they were minimally connected. Kay Berry argued that, under this permissive standard, its works were sufficiently related and therefore validly registered as a group of works under the applicable statutory provision.

Although we agree that § 408(c) represents a liberalization of the copyright laws, it does not define the requirements for a valid copyright registration. The applicable subsection states only that "[t]he regulations may require or permit, for particular classes . . . a single registration for a group of related works. 17 U.S.C. § 408(c)(1) (emphasis added).

"It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed

8

it, the sole function of the courts is to enforce it according to its terms." Caminetti v. United States, 242 U.S. 470, 485 (1917). Here, the language plainly does not grant to all copyright applicants a general right to register a group of works under a single registration. Our conclusion that the plain language of § 408(c)(1) merely allows the Register of Copyrights to determine what types of works are eligible for group registration is confirmed by the more stringent language of § 408(c)(2), which mandates that the Register of Copyrights establish regulations permitting group registration of works appearing in periodicals. See 17 U.S.C. § 408(c)(2) ("Without prejudice to the general authority provided under clause (1), the Register of Copyrights shall establish regulations . . . .") (emphasis added).

The Register of Copyrights has exercised the authority delegated by § 408(c)(1) by promulgating rules allowing for group registration for "automated databases," "related serials," "daily newspapers," "contributions to periodicals," "daily newsletters," and "published photographs." See 37 C.F.R. §§ 202.3(b)(4)-(9). Kay Berry, however, describes its Garden Accent Rocks as "sculptural works." Since the Register of Copyrights has not promulgated regulations allowing for group registration of sculptural works, we conclude that Kay Berry's registration is not valid under the current group registration provisions.

## 2. *Single Work Registration*

Kay Berry alternatively contends that its copyright registration is valid as a "single work" under 37 C.F.R. §

9

202.3(b)(3). This provision describes a single work, "[i]n the case of published works," as "all copyrightable elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same." 37 C.F.R. § 202.3(b)(3)(i)(A). The classic example of a single work is a board game. The board, the playing pieces, and the instructions may all be individually entitled to copyright protection, but since they are packaged as a single unit (the game itself), it is appropriate to allow the copyright owner to register the entire game, and protect the individual elements through that single registration. Kay Berry claims that its copyright registration covers its catalog deposit, and that Sculpture No. 646, which was published in the catalog, is an individually recognizable element of that single work and is therefore entitled to the benefits of registration under the "Single Work" provision.[1]

"Single Work" registration is separate and distinct from "Group Registration." The group registration provisions

---

[1] "'Publication' is the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101. "'Copies' are material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated . . . ." Id. Therefore, under these definitions, a copy of Sculpture No. 646 was published in the Catalog.

10

were enacted pursuant to 17 U.S.C. § 408(c)(1), and were based on Congress's desire to liberalize the registration process. See H.R. Rep. No. 94-1476, at 154 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5770. The single work registration provision, by contrast, was promulgated pursuant to the language of 17 U.S.C. § 408(a), which states that "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim . . . ." 17 U.S.C. § 408(a) (emphasis added). This provision codified the pre-existing Copyright Office practice of allowing copyright owners to register multiple works published together as a single work for a single fee. See Registration of Claims to Copyright, 43 Fed. Reg. 965, 966 (Jan. 5, 1978) (codified at 37 C.F.R. pt. 202). At the time this provision was established, the Copyright Office had "reserved for implementation in a separate proceeding, the possibility of providing for 'a single registration for a group of "related works"['] under paragraph (c)(1) of section 408." Id.

The single work registration regulation is distinct from the group registration regulation and has different qualifying requirements. The single work registration regulation is silent on whether the individual, self-contained elements of the "single work" be "related" in order to be registered. Instead, single work registration requires, in the case of published works, that all of the self-contained works be "included in a single unit of publication" and share the same copyright claimant. 37 C.F.R. § 202.3(b)(3)(i)(A).

In Benham Jewelry, 45 U.S.P.Q.2d at 1087-88, the District Court confused the requirements for single work

11

registration and group registration.  The court erroneously concluded that the single work regulation was promulgated pursuant to 17 U.S.C. § 408(c) not 408(a) and failed to note the distinct regulatory requirements for single work registration and group registration.  Id.  Although Benham Jewelry quoted the single work registration regulation, including its requirement of a "single unit of publication," the court repeatedly mentioned and discussed the requirements for "single registration for multiple related works" or group registration.  Id.

       In addition to confusing the regulatory provisions, Benham Jewelry conducted an analysis that combined the requirements of group registration and single work registration.  The court concluded that the jewelry was sufficiently "related" both because it was "marketed as a single line" and  shared the same "basic design" and had other visual elements in common.  Id. at 1088.  Because it improperly melded the "single unit of publication" requirement of single work registration and the "relatedness" requirement of group registration, Benham Jewelry concluded that the "single unit of publication" requirement was superfluous where the works at issue were sufficiently related.  Id.  This conclusion is incorrect because relatedness is not a requirement for single work registration.  As we have shown, the single work registration regulation arises from a different statutory provision than the group work registration regulation and, as a result, we cannot ignore the single unit of publication requirement as did Benham Jewelry.

       In Donald Bruce & Co. v. B.N. Multi Com Corp., 964

12

F. Supp. 265, 268-69 (N.D. Ill. 1997), the court made a similar analytical error. In that case, the court said that the group registration provision for "single registration for a group of related works" was at issue rather than the provision for a single work. Id. at 268. However, during its discussion of the relatedness requirement of group registration, the court in Donald Bruce considered whether including otherwise unrelated works in a "single unit of publication" might satisfy the relatedness requirement for group registration. In other words, the court suggested that including items in a single unit of publication might serve as a proxy for relatedness. This would improperly meld the group registration and single work registration requirements.

Both Benham Jewelry and Donald Bruce fail to account for the fundamental distinction between single work registration under 37 C.F.R. § 202.3(b)(3), and group registration under 37 C.F.R. § 202.3(b)(4). This distinction is significant. In this instance, Kay Berry's garden accent rocks may not be sufficiently "related" but they were included in a single unit of publication and the copyright claimant is the same so, regardless of their relatedness, they may be registered pursuant to the single work registration regulation.[2]

_____

[2] We further note that we are unable, on this record, to determine whether Sculpture No. 646 was first published in the Kay Berry's catalog. The government, in an amicus curiae brief submitted at our request, stated that only those individual works first published in the single work will be covered by the single work registration, citing U.S. Copyright Office, Compendium II: Compendium of Copyright Office Practices § 607.01 at 600-11

13

(1984) ("Works that are otherwise recognizable as self-contained may be registered on a single application and upon payment of a single fee, if they are <u>first</u> published in a single unit of publication and the copyright claimant of all works in the unit is the same.") (emphasis added). The government claimed that to the extent that the single work contains both new and preexisting matter, it is a "compilation" or a "derivative work." <u>See</u> 17 U.S.C. § 101 (2005). Accordingly, it contended, the copyright "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." <u>See</u> 17 U.S.C. § 103(b) (2005). Furthermore, the government claimed, "[t]he copyright in such work is independent of, and does not affect . . . any copyright protection in the preexisting material." <u>See</u> <u>id.</u>

On remand, the District Court will need to determine in the first instance whether this presents a barrier to Kay Berry's registration. Although the issue is not before us on appeal, we note that decisions of this Court and others counsel that registration of a collective work is sufficient to support an action for infringement of the underlying self-contained parts. <u>Educ. Testing Servs. v. Katzman</u>, 793 F.2d 533, 539 (3d Cir. 1986) ("Although compilations or 'collective' works may include uncopyrightable works, as well as previously copyrighted works, the fact that the registration was for compilations does not preclude protection for the material therein contributed by the author."); <u>see</u> <u>also</u> <u>Xoom, Inc.</u>, 323 F.3d at 284 (owner of copyright in the collective work and underlying works was the same and therefore could maintain an action for infringement of the underlying works); <u>Streetwise Maps v. VanDam, Inc.</u>, 159 F.3d 739, 747 (2d Cir. 1998) (where the copyright owners are

14

## B. Sculpture No. 646 is entitled to Copyright Protection

Next, the District Court concluded that Sculpture No. 646 lacked any protectible configuration or design. We disagree.

"To qualify for copyright protection, a work must be original to the author . . . mean[ing] only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991) (internal citations omitted). A sculptural work's creativity derives from the combination of texture, color, size, and shape, as well as the particular verse inscribed and the way the verse is presented. It means nothing that these elements may not be individually entitled to protection; "all creative works draw on the common wellspring that is the public domain. In this pool are not only elemental 'raw materials,' like colors, letters, descriptive facts, and the catalogue of standard geometric forms, but also earlier works of art that, due to the passage of time or for other reasons, are no longer copyright protected." Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 132 (2d Cir. 2003). When an author combines these elements and adds his or her own imaginative spark, creation occurs, and the author is entitled to protection for the

the same, a registration certificate for a later work is sufficient to maintain an action for infringement of the pre-existing work).

15

result.  Feist Publ'ns, Inc., 499 U.S. at 345.  This is true even when the author contributes only a minimal amount of creativity.  Id. at 348 (factual compilations may be copyrightable when the author "chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers."); see also Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc., 821 F.2d 800, 806 (D.C. Cir. 1987) (although no element of magazine cover – ordinary lines, typefaces, and colors – is entitled to coyright protection, the distinctive arrangement is entitled to protection as a graphic work).

Here, Kay Berry claims that it selected an inspirational poem from the public domain, adapted that poem to make it visually and rhythmically appealing, and then cast it on its own sculptural work.  For these reasons, as well as those set forth above, we conclude that this quantum of creativity is sufficient to qualify for copyright protection.  See Feist Publ'ns., 499 U.S. at 348; Reader's Digest Ass'n, 821 F.2d at 806.

## C. Kay Berry's Copyright Registration Does Not Extend to an Idea

We next turn our attention to the second part of the infringement inquiry – whether Appellees improperly copied Sculpture No. 646, and specifically, whether the expression Kay Berry seeks to protect has merged with an unprotectible idea.  Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright,

16

as set forth at 17 U.S.C. § 106, "including the rights to distribute and reproduce copyrighted material." Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 291 (3d Cir. 1991). It may be demonstrated by showing that the defendant had access to the copyrighted work and that the original and allegedly infringing works share substantial similarities. Id.; see also Dam Things from Denmark v. Russ Berrie & Co., 290 F.3d 548, 561 (3d Cir. 2002); Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1231-32 (3d Cir. 1986).

"Substantial similarity," in turn, is further broken down into two considerations: "(1) whether the defendant copied from the plaintiff's work and (2) whether the copying, if proven, went so far as to constitute an improper appropriation." Atari, Inc. v. North American Philips Consumer Elecs. Corp., 672 F.2d 607, 614 (7th Cir. 1982), superceded in part by Fed. R. Civ. P. 52(a) (as amended 1985). "First, the fact-finder must decide whether there is sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own." Whelan Assocs., 797 F.2d at 1232. A showing of substantial similarity in this sense, coupled with evidence that the infringing author had access to the original work, permits a fact-finder to infer that the infringing work is not itself original, but rather is based on the original. At this stage of the inquiry, expert testimony is permissible to help reveal the similarities that a lay person might not ordinarily perceive. Id. Direct evidence of copying or an admission by the infringing author would satisfy this test as well. Dam Things from Denmark, 290 F.3d at 562.

17

"Not all copying, however, is copyright infringement." Feist Publ'ns, 499 U.S. at 361. Even if actual copying is proven, "the fact-finder must decide without the aid of expert testimony, but with the perspective of the 'lay observer,' whether the copying was 'illicit,' or 'an unlawful appropriation' of the copyrighted work." Whelan Assocs., 797 F.2d at 1232. The focus in this second step is "whether the substantial similarities relate to protectible material." Dam Things from Denmark, 290 F.3d at 562. "Phrased in an alternative fashion, it must be shown that copying went so far as to constitute improper appropriation, the test being the response of the ordinary lay person." Universal Athletic Sales Co. v. Salkeld, 511 F.2d 904, 907 (3d Cir. 1975) (citing Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946)). Part of this inquiry involves distinguishing between the author's expression and the idea or theme that he or she seeks to convey or explore.

It is a fundamental premise of copyright law that an author can protect only the expression of an idea, but not the idea itself. See 17 U.S.C. § 102(b); see also Baker v. Selden, 101 U.S. 99, 103-04 (1880); Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc., 575 F.2d 62, 64-65 (3d Cir. 1978). Thus, an author may base his work on the same inspiration as that of an earlier work, but he may not "'copy the copy.'" Franklin Mint, 575 F.2d at 65 (quoting Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 249 (1903)). When determining whether two works are substantially similar, a fact-finder must determine whether the later work is similar because it appropriates the unique expressions of the original author, or merely because it contains elements that would be

18

expected when two works express the same idea or explore the same theme.

Nearly every work involves a blend of idea and expression. Because an author can only demonstrate substantial similarity by referencing those aspects of his work that embody his creative contribution, he will have a more difficult time proving infringement if his work contains only a minimal amount of original expression. Universal Athletic Sales, 511 F.2d at 908 ("[B]etween the extremes of conceded creativity and independent efforts amounting to no more than the trivial, the test of appropriation necessarily varies."). As one court has explained:

> [A] copyright on a work which bears practically a photographic likeness to the natural article . . . is likely to prove a relatively weak copyright. This is not to say that, as a matter of law, infringement of such a copyright cannot be inferred from mere similarity of appearance, but only that the plaintiff's burden will be that much more difficult to sustain because of the intrinsic similarities of the copyrighted and accused works.

First Am. Artificial Flowers, Inc. v. Joseph Markovits, Inc., 342 F. Supp. 178, 186 (S.D.N.Y. 1972). The First Circuit has endorsed this view, explaining that when there is only a limited number of ways to express an idea "the burden of proof is heavy on the plaintiff who may have to show 'near identity' between the works at issue." Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 606-07 (1st Cir.

19

1988) (citing Sid & Marty Krofft Television v. McDonald's Corp., 562 F.2d 1157, 1167 (9th Cir. 1977)).

In some instances, there may come a point when an author's expression becomes indistinguishable from the idea he seeks to convey, such that the two merge. Educ. Testing Servs. v. Katzman, 793 F.2d 533, 539 (3d Cir. 1986). In these circumstances, no protection is available for the expression; otherwise, the copyright owner could effectively acquire a monopoly on the underlying art or the idea itself. Id. Merger is rare, however, and is generally found in works with a utilitarian function, id. (citing Brown Instrument Co. v. Warner, 161 F.2d 910 (D.C. Cir. 1947); M.M. Bus. Forms Corp. v. Uarco, 472 F.2d 1137 (6th Cir. 1973)). This Court has never found an instance in which a completely aesthetic expression merged into an idea. For instance, in Masquerade Novelty, Inc. v. Unique Indus., 912 F.2d 663, 666 (3d Cir. 1990), this Court dealt with a case in which the plaintiff sued the defendant for infringing its copyright on humorous nose masks designed to resemble the noses, snouts, and beaks of different animals. Although the issue of substantial similarity was not before the Court, we recognized that "copyrights protect only expressions of ideas and not ideas themselves," and explained:

> By holding that Masquerade's nose masks are copyrightable, we do not intimate that it has the exclusive right to make nose masks representing pig, elephant and parrot noses. On remand, it will be Masquerade's burden to show that Unique's nose masks incorporate copies, in the copyright law sense,

20

of Masquerade's sculptures, rather than sculptures that derive their similarity to Masquerade's sculptures merely from the commonality of the animal subjects both represent.

Masquerade Novelty, 912 F.2d at 671-72 (internal citation omitted).

Here, as in Masquerade Novelty, the protectible originality of the allegedly infringed work is to be found, if at all, solely in its appearance. Kay Berry claims that Appellees infringed its copyright not by using the same public domain poem, or inscribing a rock with text, but by copying the specific combination of elements it employed to give Sculpture No. 646 its unique look. Although the evidentiary burden upon it is high, for the reasons we have discussed, we conclude that Kay Berry is entitled to the opportunity to demonstrate that the Memory Stone is neither a unique creation, nor the unavoidable expression of a common idea, but rather an impermissible copy of Sculpture No. 646. We will therefore reverse and remand to the District Court.