NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3771
_____

SHADRACH WINSTEAD,
Appellant
v.

CURTIS JACKSON, a/k/a FIFTY CENT; INTERSCOPE
RECORDS, INC.; UNIVERSAL MUSIC GROUP; G-UNIT
RECORDS; SHADY RECORDS; AFTERMATH
ENTERTAINMENT; JOHN DOES 1-10, (individuals whose
identity is as of yet unknown); ABC CORPORATIONS 1-100,
(heretofore unidentified corporations partnerships, and/or
business entities; POLYDOR, LTD
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 10-cv-05783)
District Judge: Honorable Stanley R. Chesler
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2013

Before:  RENDELL, FISHER and GARTH, Circuit Judges

(Opinion filed: January 11, 2013)
_____

OPINION OF THE COURT
_____

PER CURIAM

Appellant Shadrach Winstead appeals an order of the District Court dismissing his amended complaint for failure to state a claim upon which relief may be granted. For the following reasons, we will affirm.

In this copyright case, the parties' respective works at issue include Winstead's book, *The Preacher's Son – But the Streets Turned Me into a Gangster*, and defendant-appellee Curtis Jackson's *Before I Self-Destruct* album/CD, featuring songs and lyrics written by Jackson; and his companion film of the same name, which Jackson wrote, starred in, and directed.[1] Winstead is the sole owner of the copyright for his book. In 2007 and 2008, Winstead dictated his book, and gave the audiotapes to an individual to transcribe. Prior to publication of the book, this individual apparently either gave the book to Jackson, or gave the book to individuals who gave the book to Jackson.

On December 17, 2010, Winstead filed his original complaint in the United States District Court for the District of New Jersey, claiming that Jackson's album/CD and film derived their contents from, and infringed the copyright of, his book. In addition to suing Jackson, Interscope Records, Inc., and several other record companies, Winstead also sued Polydor, Ltd., a British corporation. Winstead alleged claims of copyright infringement and state law claims of unfair competition, conversion, misappropriation, and unjust enrichment. Winstead later filed an amended complaint, in which he explained that his book, in "graphic fashion, … describes the notoriety, power, and the money that [he] enjoyed as a gangster…." Winstead specifically asserted that his book

---

[1] Jackson is perhaps better known as "50 Cent."

included these short phrases: "Get the dope, cut this dope," "let's keep it popping," and "I said the strong takes from the weak, but the smart takes from everybody." In a scene from Jackson's film a song playing in the background includes these lyrics: "Get the dope, cut the dope, get the dope. Let's get it popping. The strong sit down, but the weak work for me." In addition, the protagonist in Winstead's book states: "I put that work in," and "Shadrach your name is ringing, ringing loud." In the song, *Gangsta's Delight*, Jackson raps "That's why my name is ringing bells in the street. I put that work in. Yeah, yeah. I put that work in. Yeah, yeah." The amended complaint notes twenty-five other examples of alleged copying.[2]

Jackson and the record companies moved to dismiss the amended complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), arguing that the copyright infringement claim failed because Winstead's book and Jackson's album/CD and film are not substantially similar as a matter of law, and that Winstead's state law claims are preempted by the Copyright Act because they are premised on the same underlying facts. The defendants further argued that Winstead had misquoted many of his alleged copying examples, rearranged Jackson's lyrics in an attempt to create similarity where none existed, and even cited language that did not exist in any form in Jackson's works. It was also argued that Polydor should be dismissed on the ground that it lacks sufficient contacts with New Jersey, see Fed. R. Civ. Pro. 12(b)(2).

---

[2] Because we write primarily for the parties, and they are familiar with the specific allegations of copying, we will not discuss them in detail except as is necessary to our discussion.

In a brief in opposition to the motion to dismiss, Winstead repeated the allegations in the amended complaint, argued their merits, and also argued that his allegations were sufficient to survive a motion to dismiss. Winstead's response to the defendants' charge that he had misquoted or deceptively rearranged many of his examples of alleged copying was to assert that such an argument was premature and belonged in a motion for summary judgment.

The District Court was provided with the book, the album/CD, the song lyrics, the film, and the film's screenplay, and the court held argument on the motion. The District Court advised Winstead that his case could indeed be dismissed on a Rule 12(b)(6) motion, and Winstead was given an opportunity to respond specifically to the defendants' charge of misquoting and deceptive rearrangement.

In an order entered on September 21, 2011, the District Court dismissed Winstead's amended complaint against all defendants, including Polydor, for failure to state a claim, concluding that Jackson and the other defendants did not improperly copy protected aspects of Winstead's book. See Winstead v. Jackson, 2011 WL 4407450 (D.N.J. September 20, 2011). The District Court reasoned that, although the book and film shared similar characters, themes, and setting, the story of a protagonist who has a difficult upbringing and turns to a life of violence and street crime has long been a part of the public domain. No copyright violation occurs where works depict gang life in inner-city New Jersey, characters spending time in jail, obtaining money through criminal activity, shoot-outs, murder, and the loss of a parent. See id. at *3.

4

The District Court further reasoned that a viewing of the book and film revealed that they were entirely dissimilar with respect to plot, mood, and sequence of events, in that the book detailed Winstead's rise above a life of violence to achieve redemption, whereas Jackson's film portrayed his protagonist's "descent into moral apathy and eventual death." Id. Further, the court reasoned that "[a]ny common themes of a young male whose tumultuous upbringing leads him to resort to a life of crime and violence in order to gain power and money are *scènes à faire*, or standard to any coming of age story of a young man from an inner-city." Id. In addressing Winstead's contention that direct phrases from his book appear in both Jackson's album/CD and film, the District Court reasoned that commonly used words and short phrases are excluded from copyright protection. The language that Winstead referred to – "putting the work in," one's name "ringing in the streets," and "get the dope, cut the dope," amounted to nothing more than generic words and phrases that were common in hip hop music. See id. "The average layman, who would be observing these phrases in the context of an overall story or song, would not regard these minute snippets as unique and protectable." Id. at *3. Last, the District Court concluded that Winstead's state law claims were preempted by federal copyright law.

Winstead appeals pro se. We have jurisdiction under 28 U.S.C. § 1291. The matter is fully briefed, and we have been provided with copies of both Winstead's book and Jackson's album/CD and film. Winstead argues in his original pro se brief that the District Court applied an incorrect standard in dismissing his Rule 12(b)(6) motion, and that the District Court improperly concluded that there was no actionable copying.

5

Winstead does not challenge the dismissal of his state law claims. Under Federal Rule of Appellate Procedure 28(a) and Third Circuit Local Appellate Rule 28.1(a), an appellant is required to set forth the issues raised on appeal and to present arguments in support of those issues in his opening brief. Because Winstead did not comply with these requirements, he has waived his state law claims. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

Our review of an order granting a Rule 12(b)(6) motion is plenary. See Sands v. McCormick, 502 F.3d 263, 267 (3d Cir. 2007). It was proper here for the District Court to dispose of Winstead's copyright infringement action on a Rule 12(b)(6) motion to dismiss. See generally In re: Rockefeller Center Properties, Inc. Securities Litig., 184 F.3d 280, 287 (3d Cir. 1999) (on motion to dismiss, District Court may consider certain narrowly defined types of material without converting motion to dismiss to summary judgment motion, including items that are integral to or explicitly relied upon in the complaint); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (District Court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Although the question of substantial similarity is one of fact, the District Court may consider, in deciding a Rule 12(b)(6) motion, the documents attached to the complaint as exhibits, including the works themselves. See Peter F. Gaito Architecture, LLC v. Simone Development Corp., 602 F.3d 57, 64 (2d Cir. 2010). "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual

6

comparison of the works.'" Id. (quoting Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 766 (2d Cir. 1991)). Thus, where the works in question have been submitted by the parties and are authentic, it is proper for the District Court to consider the similarity between those works in connection with a motion to dismiss.

In Winstead's case, the District Court had before it all that was necessary in order to make the required determination under Rule 12(b)(6) concerning substantial similarity. "[W]hen ruling on a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). We agree with the District Court's determination that there was no actionable copying of Winstead's book by the defendants. "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer." 17 U.S.C. § 501(a). To establish a claim of copyright infringement, the plaintiff must establish ownership of a valid copyright, and unauthorized copying of protectable elements of the plaintiff's work. See Dun & Bradstreet Software Servs. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002).

Here, it is not disputed that Winstead is the owner of the copyrighted property, and we note that Jackson conceded the issue of access for purposes of the motion to dismiss. However, not all copying is copyright infringement, see Feist Publications, Inc. v. Rural Telephone Service. Co., 499 U.S. 340, 361 (1991), so even if actual copying is proven, the court must decide, by comparing the allegedly infringing work with the original work, whether the copying was unlawful. See Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d

7

199, 208 (3d Cir. 2005). Copying may be proved inferentially by showing that the allegedly infringing work is substantially similar to the copyrighted work. See Dam Things From Denmark, a/k/a Troll Co. ApS v. Russ Berrie & Co., Inc., 290 F.3d 548, 561 (3d Cir. 2002). A court compares the allegedly infringing work with the original work, and considers whether a "lay-observer" would believe that the copying was of protectable aspects of the copyrighted work. Id. at 562. The "inquiry involves distinguishing between the author's expression and the idea or theme that he or she seeks to convey or explore," because the former is protected and the latter is not. Kay Berry, 421 F.3d at 208 (citing Baker v. Selden, 101 U.S. 99, 104-05 (1879)). The court must determine whether the allegedly infringing work is similar because it appropriates the unique expressions of the original work, "or merely because it contains elements that would be expected when two works express the same idea or explore the same theme." Id.

We agree with the District Court that a lay observer would not believe that Jackson's album/CD and film copied protectable aspects of Winstead's book. Jackson's album/CD is comprised of 16 individual songs, which explore drug-dealing, guns and money, vengeance, and other similar clichés of hip hop gangsterism. Jackson's fictional film is the story of a young man who turns to violence when his mother is killed in a drive-by shooting. The young man takes revenge by killing the man who killed his mother, and then gets rich by becoming an "enforcer" for a powerful criminal. He takes up with a woman who eventually betrays him, and is shot to death by her boyfriend, who has just been released from prison. The movie ends with his younger brother vowing to

8

seek vengeance. Winstead's book purports to be autobiographical and tells the story of a young man whose beloved father was a Bishop in the church. The protagonist was angry as a child because his stepmother abused him, but he found acceptance and self-esteem on the streets of Newark because he was physically powerful. He earned money robbing and beating people, went to jail, returned to crime upon his release, and then made even more money. The protagonist discusses his time at Rahway State Prison in great and compelling detail. The story ends when the protagonist learns that his father has passed away; he conveys his belief that this tragedy has led to his redemption, and he hopes that others might learn from his mistakes.

There was a failure to state an actionable claim for copyright infringement here because, although Winstead's book and Jackson's works share similar themes and setting, the story of an angry and wronged protagonist who turns to a life of violence and crime has long been a part of the public domain. Winstead argues in his original opening brief that a protagonist asking for God's help when his father dies, cutting drugs with mixing agents to maximize profits, and complaining about relatives who are addicts and steal the product, are protectable, but these things are not unique. To the extent that Jackson's works contain these elements, they are to be expected when two works express the same idea about "the streets" or explore the same theme. Kay Berry, 421 F.3d at 208. Winstead argues that not every protagonist whose story concerns guns, drugs, and violence in an urban setting winds up in prison or loses a parent, see Appellant's Brief, at 16, but this argument only serves to illustrate an important difference between his book

9

and Jackson's film. Jackson's protagonist never spends any time in prison, whereas Winstead's protagonist devotes a considerable part of his story to his incarcerations.

In addition, Winstead's book and Jackson's works are different with respect to character, plot, mood, and sequence of events. Winstead's protagonist embarks on a life of crime at a very young age, but is redeemed by the death of his beloved father. Jackson's protagonist turns to crime when he is much older and only after his mother is murdered. He winds up dead at a young age, unredeemed. Winstead's book is hopeful; Jackson's film is characterized, as the District Court explained, by moral apathy. It is true that both works involve the loss of a parent and the protagonist's recognition of the parent's importance in his life, but nowhere does Jackson appropriate anything unique about Winstead's expression of this generic topic.

Winstead contends that direct phrases from his book appear in Jackson's film. In his reply brief he emphasizes these phrases: "Yo, where is my money at," "I would never have done no shit like that to you," "my father, my strength was gone," "he was everything to me," and "I did not know what to do," but, like the phrases "putting the work in," "get the dope, cut the dope," "let's keep it popping," and "the strong take from the weak but the smart take from everybody," they are either common in general or common with respect to hip hop culture, and do not enjoy copyright protection. The average person reading or listening to these phrases in the context of an overall story or song would not regard them as unique and protectable. See Dam Things From Denmark, 290 F.3d at 562. Moreover, words and short phrases do not enjoy copyright protection. See 37 C.F.R. § 202.1(a); accord Southco, Inc. v. Kanebridge Corp., 390 F.3d 276, 285-

10

87 (3d Cir. 2004).  The similarity between Winstead's book and the lyrics to Jackson's songs on the album/CD is even more tenuous.  "Stretching the dope" and "bloodshot red eyes" are common phrases that do not enjoy copyright protection.  A side-by-side comparison of Winstead's book and the lyrics from Jackson's album/CD do not support a claim of copyright infringement.

For the foregoing reasons, we will affirm the order of the District Court dismissing the amended complaint as to all defendants.  Appellant's motion to lodge exhibits is denied.  A party may not add exhibits which were not part of the record in the proceedings below in order to support his positions on appeal.  See, e.g., Union Pacific Railroad Co. v. Greentree Transp. Trucking Co., 293 F.3d 120, 126 (3d Cir. 2002).[3]

---

[3] For similar reasons, we have also disregarded materials and arguments in Winstead's opening and reply brief that were not a part of the materials and arguments before the District Court.