NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1959
_____

ISABELLA TANIKUMI,
a/k/a L. Amy Gonzalez,
                              Appellant

v.

THE WALT DISNEY COMPANY; DISNEY ENTERPRISES, INC.;
DISNEY WORLDWIDE SERVICES, INC.;
ABC CORP, 1-10 (a fictitious name)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-14-cv-05877)
District Judge:  Honorable William J. Martini
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 18, 2015

Before: AMBRO, VANASKIE and SLOVITER, Circuit Judges

(Opinion filed: September 29, 2015)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Amy Gonzales, who writes under the pen name Isabella Tanikumi, appeals from the District Court's order dismissing her complaint in this copyright infringement case. Tanikumi also appeals from the District Court's subsequent order denying her motion to reopen the judgment. For the following reasons, we will affirm.

I.

Tanikumi is the author of two autobiographical books, Yearnings of the Heart and Living My Truth, An Internal Odyssey (together, "Yearnings").[1] In September 2014, Tanikumi commenced this action in the United States District Court for the District of New Jersey against the defendants, the Walt Disney Company, Disney Enterprises Inc., and Disney Worldwide Services, Inc. ("Disney"), alleging that Disney's animated motion picture Frozen infringes the copyright of her books. Tanikumi asked the District Court to order Disney to cease and desist from all sales, distribution, and marketing of Frozen in any media format, and sought $250,000,000.00 as well as punitive damages.

Disney moved to dismiss the complaint on the ground that it failed to state a claim of copyright infringement because the works are not substantially similar. See Fed. R. Civ. P. 12(b)(6). Although it appears that Tanikumi and Disney stipulated to an extension of time for Tanikumi to oppose the motion, the District Court never learned of the stipulation, and, by order entered February 19, 2015, the District Court granted

---

[1] Tanikumi alleges that Living My Truth was copyrighted in 2010 and then "reprinted" as Yearnings, with copyright dates of 2010 and 2013. (Compl. ¶ 1.) Tanikumi argues generally that Disney plagiarized her "works." Because the District Court referred to both works together as Yearnings, we will do so as well.

2

Disney's motion without a response from Tanikumi. Immediately thereafter, Tanikumi notified the District Court that she had attempted to timely file the stipulation regarding the extension, and asked the court to vacate its order so that it could consider her forthcoming opposition brief.

On March 18, 2015, Tanikumi filed an opposition brief. The District Court construed the post-judgment filing as a motion to vacate the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, and, by order entered April 1, 2015, denied relief. This timely appeal followed.

## II.

We have jurisdiction to review the District Court's orders under 28 U.S.C. § 1291. See Fed. R. App. P. 4(a)(4)(A)(vi); Wiest v. Lynch, 710 F.3d 121, 127 (3d Cir. 2013). We review the District Court's order granting Disney's motion to dismiss de novo. See McMullen v. Maple Shade Twp., 643 F.3d 96, 98 (3d Cir. 2011). Dismissal for failure to state a claim is proper if a party fails to allege sufficient factual matter, which if accepted as true, could "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). We ordinarily review the denial of a Rule 60(b) motion for abuse of discretion. See In re Cendant Corp. PRIDES Litig., 234 F.3d 166, 170 (3d Cir. 2000). A court abuses its discretion when its ruling "rests upon a clearly erroneous finding of fact, an errant conclusion of law[,] or an improper application of law to fact." Id. In examining the legal grounds that a district court relied on in denying Rule 60(b) relief, we may review

3

the court's legal conclusions de novo. See Koshatka v. Phila. Newspapers, Inc., 762 F.2d 329, 333 (3d Cir. 1985) ("[I]f the court's denial was based upon the interpretation and application of a legal precept, review is plenary.").

III.

A.

Tanikumi first claims that the District Court failed to follow the appropriate "two-step" procedure in adjudicating her Rule 60(b) motion; according to Tanikumi, the court should have first granted Rule 60(b) relief (and vacated its order dismissing the complaint), and then considered Disney's motion to dismiss anew in light of her opposition brief.

We see no error in the District Court's approach here. In general, a motion for relief under Rule 60(b) should not be granted unless the movant can demonstrate a meritorious claim or defense. Lepkowski v. U.S. Dep't of the Treasury, 804 F.2d 1310, 1314 (D.C. Cir. 1986). "The requirement that parties seeking Rule 60(b) relief show some prospect of succeeding on the merits flows from the basic principle that courts should revive previously-dismissed claims only if they have some reason to believe that doing so will not ultimately waste judicial resources." Thomas v. Holder, 750 F.3d 899, 903 (D.C. Cir. 2014). "[T]o obtain relief under Rule 60(b), a litigant must give the trial court reason to believe that vacating the judgment will not be an empty exercise in any new proceedings." United States v. Kayser-Roth Corp., 272 F.3d 89, 95 (1st Cir. 2001) (quotation marks and citation omitted).

In this case, the District Court chose to consider Tanikumi's opposition brief out of time, but ultimately determined that nothing in the brief warranted revisiting its initial ruling that she had failed to state a claim upon which relief could be granted. While it would not have been error for the District Court to take the approach that Tanikumi suggests, it would have been an "empty exercise" for the court to vacate its order dismissing the complaint only to immediately enter another order of dismissal. Cf. Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002) (explaining that when a plaintiff files a post-judgment motion to amend the complaint, the court should consider the motion under the standards of both Rules 60(b) and 15(a) because it "would be a needless formality for the court to grant the motion to reopen the judgment only to deny the motion for leave to amend").

In a closely related argument, Tanikumi also contends that the District Court erroneously applied a conflated, heightened standard to her copyright infringement claim by ruling on it in a Rule 60(b) motion. According to Tanikumi, because the court failed to follow the two-step approach described above, it applied "brutal standards" and "continue[d] to look for special circumstances in [her] opposition arguments." (Br. 6-7.) We disagree. The District Court's opinion makes clear that it first considered whether Tanikumi had demonstrated extraordinary circumstances justifying reopening the judgment under Rule 60(b), see Moolenaar v. Gov't of V.I., 822 F.2d 1342, 1346 (3d Cir. 1987), and then considered whether the complaint stated a plausible copyright infringement claim in light of the arguments set forth in Tanikumi's post-judgment filing,

5

see Iqbal, 556 U.S. at 678.  Accordingly, it is clear that the District Court did not apply any improper legal standards here.

Tanikumi next contends that the District Court erred by comparing the works' similarities at the pleadings stage.  It is well established, however, that a district court may consider items that are integral to the complaint on a motion to dismiss.  See In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999); see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (explaining that a district court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").  Furthermore, although the question of substantial similarity in a copyright infringement case is one of fact, a district court is permitted to consider the disputed works in deciding a Rule 12(b)(6) motion.  See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) ("When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works.") (quotation marks and citation omitted).  In this case, because Tanikumi's books and Disney's motion picture were integral to the complaint and part of the record before the court, the District Court did not err in considering the works to determine that Tanikumi had failed to state a plausible copyright infringement claim.

## B.

Tanikumi also challenges the District Court's determination that she failed to state

6

a claim of copyright infringement. To establish a claim of copyright infringement, the plaintiff must establish that the defendant copied protectable elements of her work.[2] See Dun & Bradstreet Software Servs. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002). A plaintiff can establish that the defendant copied her work by demonstrating that there are substantial similarities between the two works. Dam Things from Den., 290 F.3d at 561. "[T]his inquiry involves distinguishing between the author's expression and the idea or theme that he or she seeks to convey or explore," because the former is protected and the latter is not. Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 208 (3d Cir. 2005). The court must determine whether the allegedly infringing work is similar because it appropriates the unique expressions of the original work, "or merely because it contains elements that would be expected when two works express the same idea or explore the same theme." Id.

In determining that Yearnings and Frozen are not substantially similar, the District Court ably summarized the works as follows:

> Yearnings of the Heart follows the trajectory of the author's life and how she emotionally overcame external tragedies and inner insecurities. The book begins with the author growing up in Huaraz, a city in the mountains of Peru. Her family survives a devastating earthquake. She suffers a kitchen accident that scars her face and leaves her with emotional insecurities. She endures romantic jiltings several times as a teenager. She

---

[2] A plaintiff must also plead facts establishing that the defendant had access to the copyrighted work in order to state a claim of copyright infringement. Dam Things from Den. v. Russ Berrie & Co., 290 F.3d 548, 561 (3d Cir. 2002). Because the District Court concluded that the works in this case were not substantially similar, it did not reach the issue of whether Tanikumi's complaint established access as well. Because we affirm the District Court's holding in this regard, we do not reach this issue either.

7

moves to Lima to study nursing and lives with her sister Laura, with whom she shares an intense sisterly bond. She dates a man she ultimately rejects because of his alcoholism. Tragically, Laura dies when she is hit by a drunk driver.

The author moves to the United States where she becomes a physical therapist. She finds a dermatologist who is able to take the scars off her face. She falls in love with a man named Eduardo who shows interest in her, but she feels shy and makes up a false reason why she cannot be with him.

Eventually she meets a television producer, gets married, and has a family. At the end of the book, she reconnects with Eduardo on Facebook. They have an awkward meeting after which Eduardo unfriends her on Facebook. The book ends with the author pondering the meaning of her connection with Eduardo.[3]

*Frozen's* credits state that it was inspired by Hans Christian Andersen's story, "The Snow Queen." *Frozen* tells the story of two sisters,

---

[3] Tanikumi summarizes the themes of her autobiography on the back cover of <u>Living My Truth</u> as follows:

> In this compelling, introspective account of her life, Isabella Tanikumi takes her readers on a journey through the various phases of her remarkable life—from her family's survival of the devastating 1970 earthquake in Huaraz, Peru, to the trials of overcoming the heartbreaks of youth; from the triumph of conquering personal insecurities and exploring the reaches of her intellect, to facing the tragic, untimely death of her beloved sister. . . . Despite language barriers and the consequent obstacles of fitting in, the author wittily narrates her struggles with assimilation into American life and culture and the forging of many enduring friendships— most notably Julie, who rescued her from the depths of grief. Into her lyrical prose the author interweaves a dialogue with her long lost love, "Eduardo Davidio," with whom, from the time of their first meeting, she felt an undeniable connection. . . . Ultimately, the author shares her gratitude and joy in every day, and her insatiable thirst for life.

(A130.)

Elsa and Anna, who are princesses of a make-believe Nordic kingdom called Arendelle. Arendelle is surrounded by mountains and fjords. Elsa, the older sister, has magical abilities to create ice and snow. As the children frolic in an indoor snowstorm of Elsa's creation, she accidentally zaps Anna in the head with a surge of cryokinetic energy, causing an injury. Trolls are able to heal Anna. Nevertheless, the family decides to isolate Elsa from the world and her sister until she learns to control her powers. Later, Elsa and Anna's parents die in a shipwreck.

When Elsa comes of age, she becomes the queen. Emissaries from far [and] wide come to her coronation. One of those emissaries is Prince Hans of the Southern Isles, with whom Anna falls immediately in love. At the coronation ball, Anna asks Elsa for permission to marry Hans. Elsa refuses. The sisters have a fight, and in the course of doing so, Elsa accidentally exposes her powers to a crowd of horrified onlookers. Embarrassed and accused of being a witch, Elsa flees to the mountains to live alone in an ice castle. Inadvertently, she creates a permanent winter in the kingdom during her flight.

Anna follows Elsa to the mountains. Anna asks Elsa to return to Arendelle and end the winter. Elsa states that she does not know how to undo the spell and will remain a recluse for Anna's own safety. The sisters have a dispute, and Elsa again accidentally hits Anna with a surge of magical energy, this time in the chest. Anna's hair turns white. The trolls advise that there is frost in her heart and that she will eventually freeze to death. Only an act of true love can save her.

Eventually Anna and Elsa return to Arendelle, where it is expected that Hans's kiss will save Anna from death. But Hans refuses to kiss Anna, revealing that the marriage was just part of a scheme to take Arendelle's throne; he planned to marry Anna, stage an accident for Elsa, and then assume the throne. Hans leaves Anna for dead and goes to kill Elsa, but Anna intervenes and saves Elsa's life. This is the act of true love that saves Anna from freezing to death. The winter spell breaks, and the sisters reconcile.

(Opinion 2-3, ECF No. 11.) Having reviewed the works, the District Court found that

Yearnings and Frozen are not substantially similar in their protected elements.

We agree with the District Court that Frozen does not appropriate any unique expressions from Yearnings. Tanikumi contends that there are "many tens, perhaps more than 100, points of identical characters, events, mishaps, emotions and words and phrases that are found in both [her] works and Defendants' Frozen." (Br. 14.) For example, Tanikumi explains that both Yearnings and Frozen involve: a village at the foot of snow-covered mountains; two sisters with "intense sisterly love"; an incident in which the older sister accidentally injures the younger sister and the younger sister has no memory of the incident; a traumatic natural disaster; the betrayal of a young girl's first love; and romantic scenes set under the shadows of the moon. (Br. 10-13.)

These works are not substantially similar. As the District Court explained, the similarities that Yearnings and Frozen share pertain only to generic plot and theme ideas, not protectable expressions; while both works feature a mountain setting, an intense sisterly bond, an untrue lover, and a resolution in which the female protagonist comes into her own without the help of a man, copyright law does not protect such common topics in autobiographical literature and film. See, e.g., Cavalier v. Random House, Inc., 297 F.3d 815, 828 (9th Cir. 2002) (explaining that children's television series was not substantially similar to authors' copyright works despite similarities in themes, including teaching children to overcome their fears and having magical adventures because such themes are standard topics in children's literature); Williams v. Crichton, 84 F.3d 581, 588-89 (2d Cir. 1996) (holding that motion picture Jurassic Park was not substantially similar to children's book Dinosaur World because nearly all similarities arise from non-

10

copyrightable elements such as a dinosaur zoo).  While there are indeed certain similarities between the works, they concern prototypical settings, plots, and characters too indistinct to merit copyright protection.

Furthermore, there are dramatic differences between the mood and overall feel of these works: Yearnings is—in Tanikumi's own words—an "introspective account of . . . her remarkable life," in which she "beckons her readers to follow her evolution through the incremental unfolding of deeply personal truths."  (App. 130.)  Frozen, by contrast, is a light-hearted, at times comical and satirical children's movie involving princesses and castles, magical powers, and talking animals.  See, e.g., Berkic v. Chrichton, 761 F.2d 1289, 1294 (9th Cir. 1985) (explaining that novel and motion picture were substantially dissimilar in "the mood evoked as a whole" and in the "total concept and feel of the works") (alteration omitted).

Because Tanikumi failed to allege any legally recognized similarities between Yearnings and Frozen, the District Court properly held that she failed to state a plausible claim of copyright infringement.[4]

_____

[4] Tanikumi also argues on appeal that the image of Elsa on the cover of the *Frozen* DVD infringes the image of Isabella on the rear cover of *Yearnings*.  The District Court did not address this purported claim, and Disney argues that it was not included in the complaint. There is also some dispute as to whether Disney submitted the wrong DVD cover to the District Court.  In addition, we note that there is no indication in the record as to whether Tanikumi's copyright extended to the cover art.  All this notwithstanding, we have reviewed the images and conclude that they are not substantially similar with respect to any protectable elements.

11

For these reasons, we will affirm the District Court's judgment.[5]

---

[5] Disney's motion to expand the record is granted.