PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 18-2266

SILVERTOP ASSOCIATES INC.,
DBA Rasta Imposta

v.

KANGAROO MANUFACTURING INC.,
Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-17-cv-07919)
District Judge: Honorable Noel L. Hillman

Argued April 3, 2019
Before: CHAGARES, HARDIMAN, *Circuit Judges*, and
GOLDBERG, *District Judge*.[*]

_____

[*] Honorable Mitchell S. Goldberg, District Judge of the
United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

(Filed: August 1, 2019)

Alexis Arena [Argued]
Flaster Greenberg
1835 Market Street
Suite 1050
Philadelphia, PA 19103

Eric R. Clendening
Flaster Greenberg
1810 Chapel Avenue West
Cherry Hill, NJ 08002
        *Attorneys for Appellee*

David A. Schrader [Argued]
Paykin Krieg & Adams
750 Third Avenue, 9th Floor
New York, NY 10017
        *Attorney for Appellant*

---

OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

This interlocutory appeal involves the validity of a copyright in a full-body banana costume. Appellant Kangaroo Manufacturing Inc. concedes that the banana costume it manufactures and sells is substantially similar to the banana costume created and sold by Appellee Rasta Imposta. *See infra* Appendix A. Yet Kangaroo claims that Rasta cannot hold a

2

valid copyright in such a costume's "pictorial, graphic, or sculptural features." 17 U.S.C. § 101. This dispute presents a matter of first impression for our Court and requires us to apply the Supreme Court's recent decision in *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017). We hold that, in combination, the Rasta costume's non-utilitarian, sculptural features are copyrightable, so we will affirm the District Court's preliminary injunction.

I

This dispute stems from a business relationship that went bad. In 2010, Rasta obtained Copyright Registration No. VA 1-707-439 for its full-body banana costume. Two years later, Rasta began working with a company called Yagoozon, Inc., which purchased and resold thousands of Rasta's banana costumes. Yagoozon's founder, Justin Ligeri, also founded Kangaroo and at all relevant times was aware of Rasta's copyright registration in the banana costume. After the business relationship between Rasta and Yagoozon ended, Rasta's CEO, Robert Berman, discovered Kangaroo selling a costume that resembled his company's without a license.

Rasta sued Kangaroo for copyright infringement, trade dress infringement, and unfair competition. After settlement discussions were unsuccessful, Rasta moved for a preliminary injunction and Kangaroo responded by moving to dismiss. The District Court granted the motion for a preliminary injunction and explained its reasons for doing so in a thorough opinion. *See Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754 (D.N.J. 2018). It also dismissed the unfair competition count. Kangaroo appealed, but because the District Court had not entered an order detailing the injunction's terms, we granted the parties' motion to remand

3

for the limited purpose of entering a corrected order. The District Court amended its order, and the injunction is now ripe for review on appeal.

## II

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). We have jurisdiction under 28 U.S.C. § 1292(a)(1). We review the District Court's conclusions of law de novo and its ultimate decision to grant the preliminary injunction for abuse of discretion. *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004).[1]

## III

Kangaroo claims the injunction should not have issued because Rasta is not likely to succeed on the merits of its copyright infringement claim.[2] According to Kangaroo, Rasta

---

[1] Kangaroo argues that the District Court erred by failing to apply the heightened mandatory injunction standard. *See Trinity Indus. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013). We disagree for the reasons the District Court articulated: Rasta's motion for a preliminary injunction did not request all or substantially all of its relief in a way that the relief could not later be undone. *See Punnett v. Carter*, 621 F.2d 578, 582–83 (3d Cir. 1980). And Rasta's preliminary injunction motion merely sought to maintain the status quo the parties agreed to in their Stipulation of Standstill. *See id.*

[2] The other three prerequisites for injunctive relief are not at issue.

does not hold a valid copyright in its banana costume. Whether Rasta's copyright is valid is a question of law, which makes our review plenary. *See Masquerade Novelty, Inc. v. Unique Indus.*, 912 F.2d 663, 667 (3d Cir. 1990).[3] And we must remain "cognizant of the Supreme Court's teaching that copyrights protect only expressions of ideas and not ideas themselves." *Id.* at 671 (citing *Mazer v. Stein*, 347 U.S. 201, 217 (1954)).

We begin by analyzing whether non-utilitarian, sculptural features of the costume are copyrightable by determining whether those features can be identified separately from its utilitarian features and are capable of existing independently from its utilitarian features. *See* 17 U.S.C. § 101; *Star Athletica*, 137 S. Ct. at 1008. We then consider whether the merger and *scenes a faire* doctrines render the costume ineligible for copyright protection. We conclude that the District Court did not err when it held that Rasta is reasonably likely to prove ownership of a valid copyright.

---

[3] Registering a work's copyright within five years of the work's first publication entitles the holder to a presumption of validity. *See* 17 U.S.C. § 410(c). A later-filed registration may still be probative though. *See id.* ("The evidentiary weight to be accorded [a later-filed] certificate . . . shall be within the discretion of the court."). Here, Rasta's Certificate of Registration lists a 2001 first publication date and a 2010 registration date, so it is not entitled to the statutory presumption of validity, though we may consider the registration's existence in our analysis.

A

"A valid copyright extends only to copyrightable subject matter." *Star Athletica*, 137 S. Ct. at 1008. Copyrightable subject matter means "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Originality is a very low bar, requiring "only a minimal amount of creativity." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005). "Works of authorship include . . . pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a)(5), which are "two-dimensional and three-dimensional works of fine, graphic, and applied art, [etc.]," *id.* § 101. "And a work of authorship is 'fixed in a tangible medium of expression when it is embodied in a' 'material object . . . from which the work can be perceived, reproduced, or otherwise communicated.'" *Star Athletica*, 137 S. Ct. at 1008 (internal quotation marks and alterations omitted) (quoting 17 U.S.C. § 101).

A special rule applies to "useful article[s]," *i.e.*, those which have "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Id.* (quoting 17 U.S.C. § 101). Without more, they may not receive protection as such. *Id.* Instead, useful articles that "incorporate[] pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article" may be eligible for protection of those features alone. *Id.* (quoting 17 U.S.C. § 101). Thus, separability analysis determines whether a useful article contains copyrightable features.

A useful article's design feature "is eligible for copyright if, when identified and imagined apart from the

6

useful article, it would qualify as a pictorial, graphic, or sculptural work either on its own or when fixed in some other tangible medium." *Id.* at 1012 (describing separability analysis). So we ask two questions: (1) can the artistic feature of the useful article's design "be perceived as a two- or three-dimensional work of art separate from the useful article[?]" and (2) would the feature "qualify as a protectable pictorial, graphic, or sculptural work either on its own or in some other medium if imagined separately from the useful article[?]" *Id.* at 1016.

The first requirement "is not onerous. The decisionmaker need only be able to look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities." *Id.* at 1010.

The second requirement, which is "ordinarily more difficult to satisfy," requires "that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." *Id.* ("In other words, the feature must be able to exist as its own pictorial, graphic, or sculptural work as defined in § 101 once it is imagined apart from the useful article."). And that separate feature "cannot itself be a useful article or 'an article that is normally a part of a useful article' (which is itself considered a useful article)." *Id.* (alteration omitted) (quoting 17 U.S.C. § 101). We do not focus on "any aspects of the useful article that remain after the imaginary extraction." *Id.* at 1013. Nor does the work's marketability or artistic merit bear on our analysis. *See id.* at 1015. Thus, the two-part inquiry effectively turns on whether the separately imagined features are still intrinsically useful.

We have explained that we do not analyze each feature in isolation; instead, a "specific *combination* of elements" that

gives a sculpture "its unique look" could be eligible for copyright protection. *Kay Berry*, 421 F.3d at 209 (emphasis added). Those combined features may include "texture, color, size, and shape," among others, and it "means nothing that these elements may not be individually entitled to protection." *Id.* at 207; *see also Star Athletica*, 137 S. Ct. at 1012 (analyzing the uniform designs' "arrangement of colors, shapes, stripes, and chevrons" together, not individually).

The Supreme Court in *Star Athletica* found the two-dimensional design patterns on cheerleader uniforms eligible for copyright protection. *Id.* The uniform's utilitarian "shape, cut, and dimensions" were *not* copyrightable, but "the two-dimensional work of art fixed in the tangible medium of the uniform fabric" was. *Id.* at 1013. Imagining those designs apart from the uniform did not necessarily replicate the useful article even though the designs still looked like uniforms. *See id.* at 1012.

The *Star Athletica* Court also provided helpful examples addressing three-dimensional articles. First, it reaffirmed its decision in *Mazer*, which held that a statuette depicting a dancer, intended for use as a lamp base, was eligible for copyright protection. *Id.* at 1011 (citing 347 U.S. at 214, 218–19). Second, the Court noted that a replica of a useful article (cardboard model car) could be copyrightable, although the underlying article (the car itself) could not. *Id.* at 1010. Finally, the Court noted that a shovel, "even if displayed in an art gallery," still has an intrinsic utilitarian function beyond portraying its appearance or conveying information. *Id.* at 1013 n.2. So it could not be copyrighted, even though a drawing of a shovel or any separately identifiable artistic features could. *Id.* We too have observed that "just because a sculpture is incorporated into an article that functions as other than a pure

8

sculpture does not mean that the sculptural part of the article is not copyrightable." *Masquerade Novelty*, 912 F.2d at 669.

B

Having articulated the legal principles that govern our analysis, we turn to the particular facts of this case. To begin with, Rasta's banana costume is a "useful article."[4] The artistic features of the costume, in combination, prove both separable and capable of independent existence as a copyrightable work: a sculpture. Those sculptural features include the banana's combination of colors, lines, shape, and length. They do not include the cutout holes for the wearer's arms, legs, and face; the holes' dimensions; or the holes' locations on the costume, because those features are utilitarian.[5] Although more difficult

---

[4] We have noted that "a costume . . . may serve, aside from its appearance, to clothe the wearer." *Masquerade Novelty*, 912 F.2d at 670. *Star Athletica* addressed cheerleader uniforms as useful articles. 137 S. Ct. at 1010. And Rasta concedes its costume is a useful article.

[5] The District Court correctly found "that the cutout holes are not, per se, a feature eligible for copyright" because they "perform a solely utilitarian function." *Silvertop*, 319 F. Supp. 3d at 764. It went on, however, to list "the location of the head and arm cutouts which dictate how the costume drapes on and protrudes from a wearer (as opposed to the mere existence of the cutout holes)" among the copyrightable features. *Id.* at 765. We disagree with that portion of the District Court's analysis because we must imagine the banana apart from the useful (*i.e.*, wearable) article. Rasta has not identified any artistic aspect to the holes' dimensions or

9

to imagine separately from the costume's "non-appearance related utility" (*i.e.*, wearability) than many works, *Masquerade Novelty*, 912 F.2d at 669, one can still imagine the banana apart from the costume as an original sculpture. That sculpted banana, once split from the costume, is not intrinsically utilitarian and does not merely replicate the costume, so it may be copyrighted.

Kangaroo responds that we must inspect each feature individually, find each one too unoriginal or too utilitarian in isolation for copyright, and decline to protect the whole. But *Kay Berry* forecloses this divide-and-conquer approach by training our focus on the combination of design elements in a work. *See* 421 F.3d at 209–10 (focusing on "the specific combination of elements [] employed to give [a work] its unique look"). And the *Star Athletica* Court did not cherry-pick the uniform designs' colors, shapes, or lines; it too evaluated their combination. 137 S. Ct. at 1012 (focusing on "the arrangement of colors, shapes, stripes, and chevrons on the surface of the cheerleading uniforms"). Thus, the separately imagined banana—the sum of its non-utilitarian parts—is copyrightable.

Kangaroo also contends the banana is unoriginal because its designers based the design on a natural banana. They ask us to hold that depictions of natural objects in their natural condition can never be copyrighted. This argument

---

locations except in relation to the wearer. The cutout holes' dimensions and locations on the costume are intrinsically useful (perhaps even necessary) to make the costume wearable like the "shape, cut, and dimensions" of the cheerleader uniforms in *Star Athletica*, so they cannot be copyrighted. 137 S. Ct. at 1012.

seeks to raise the originality requirement's very low bar, which precedent forecloses for good reason. *See Kay Berry*, 421 F.3d at 207. A judge's own aesthetic judgments must play no role in copyright analysis. *See Star Athletica*, 137 S. Ct. at 1015. "Our inquiry is limited to how the article and feature[s] are perceived, not how or why they were designed." *Id.* The cases Kangaroo cites in its brief confirm that whether natural objects are copyrightable depends on the circumstances. *Compare Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (holding that a sculpture of a jellyfish was not copyrightable), *with Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 69 (1st Cir. 2009) (holding that several elements of a plush toy depicting a tree frog were copyrightable). The essential question is whether the depiction of the natural object has a minimal level of creativity. Rasta's banana meets those requirements.

In furtherance of its argument that costumes depicting items found in nature can never be copyrighted, Kangaroo relies on *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452 (2d Cir. 1989). *Whimsicality* involved a company's misrepresentation of its costumes as only "soft sculpture" on its application for copyright registration, without any indication (written or pictorial) that they could be worn. *Id.* at 456. Unlike that case, here the Copyright Office recognized that Rasta sought to copyright a costume and initially refused to register a copyright *because* it was a costume. Additionally, the *Whimsicality* court imagined the costumes peeled away from their wearers as deflated piles of fabric, leaving nothing recognizable or original to copyright. *See id. Star Athletica* does not allow that approach in this appeal. The three-dimensional banana sculpture that separability analysis requires us to imagine is not a crumpled pile of fabric; it is a recognizable rendering of a banana. *See Star Athletica*, 137 S.

11

Ct. at 1012 (requiring courts to imagine the separated work "on its own *or when fixed* in some other tangible medium" (emphasis added)). Courts have not, as Kangaroo claims, "consistently found that costumes of natural items, such as bees and pumpkins, cannot be copyrighted." Reply Br. 5; *see also Animal Fair, Inc. v. Amfesco Indus.*, 620 F. Supp. 175, 188 (D. Minn. 1985) (finding a slipper in the shape of a bear's paw copyrightable), *aff'd mem.*, 794 F.2d 678 (8th Cir. 1986). Indeed, the Second Circuit focused its decision on Whimsicality's misrepresentation to the Copyright Office and did not even reach the question whether costumes are an exception to the general rule that clothing is not copyrightable. 891 F.2d at 455–56. In our view, the non-utilitarian, sculptural features of this costume are just such an exception.[6]

We therefore hold that the banana costume's combination of colors, lines, shape, and length (*i.e.*, its artistic features) are both separable and capable of independent existence, and thus are copyrightable.

C

Lastly, Kangaroo invokes two copyright doctrines—merger and *scenes a faire*—to argue the banana costume is ineligible for protection. Both arguments address the same

---

[6] Kangaroo's reliance on the underlying district court decision in *Whimsicality* is also misplaced because that decision, though carefully reasoned, employed a separability analysis inconsistent with the analysis required by *Star Athletica*. *See Whimsicality, Inc. v. Rubie's Costumes Co.*, 721 F. Supp. 1566, 1572–76 (E.D.N.Y.), *order aff'd in part, vacated in part sub nom.*, 891 F.2d 452 (2d Cir. 1989).

question: whether copyrighting the banana costume would effectively monopolize an underlying idea, either directly or through elements necessary to that idea's expression.

Because Congress has excluded "any idea, procedure, process, system, method of operation, concept, principle, or discovery" from copyright protection, 17 U.S.C. § 102(b), courts deny such protection when a work's underlying idea can effectively be expressed in only one way. Courts term this rare occurrence "merger," and find it only when "there are no or few other ways of expressing a particular idea." *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986) (quoting *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983). And if copyrighting a design feature would effectively monopolize an underlying idea, procedure, process, etc., then the merger doctrine exists to deny that protection. *See Kay Berry*, 421 F.3d at 209. Notably, merger "is most applicable where the idea and the expression are of items found in nature, or are found commonly in everyday life." *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 36 (1st Cir. 2001). But if copyright does not foreclose "other methods of expressing [an] idea . . . as a practical matter, then there is no merger." *Educ. Testing Servs.*, 793 F.2d at 539 (quoting *Apple Comput.*, 714 F.2d at 1253).

Here, copyrighting Rasta's banana costume would not effectively monopolize the underlying idea because there are many other ways to make a costume resemble a banana. Indeed, Rasta provided over 20 non-infringing examples. As the District Court observed, one can easily distinguish those examples from Rasta's costume based on the shape, curvature, tips, tips' color, overall color, length, width, lining, texture, and material. *See Silvertop Assocs.*, 319 F. Supp. 3d at 768. We agree and hold the merger doctrine does not apply here.

Courts also exclude *scenes a faire* from copyright protection, which include elements "standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting." *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 214 (3d Cir. 2002) (quoting *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 838 (10th Cir. 1993)). The doctrine covers "those elements of a work that necessarily result[] from external factors inherent in the subject matter of the work." *Id.* at 215 (quoting *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997)). As with merger, the *scenes a faire* doctrine seeks to curb copyright's potential to allow monopolizing an underlying idea—via features that are so common or necessary to that idea's expression that copyrighting them effectively copyrights the idea itself. *E.g.*, *Mitel*, 124 F.3d at 1374–75 (citing foot chases as a *scene a faire* of police fiction).

Here too, copyrighting the banana costume's non-utilitarian features in combination would not threaten such monopolization. Kangaroo points to no specific feature that *necessarily* results from the costume's subject matter (a banana). Although a banana costume is likely to be yellow, it could be any shade of yellow—or green or brown for that matter. Although a banana costume is likely to be curved, it need not be—let alone in any particular manner. And although a banana costume is likely to have ends that resemble a natural banana's, those tips need not look like Rasta's black tips (in color, shape, or size). Again, the record includes over 20 examples of banana costumes that Rasta concedes would be non-infringing. The *scenes a faire* doctrine does not apply here either.

14

*     *     *

Because Rasta established a reasonable likelihood that it could prove entitlement to protection for the veritable fruits of its intellectual labor, we will affirm.

# APPENDIX A



RASTA IMPOSTA       KANGAROO ITEM 10477       KANGAROO ITEM 10478