**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1603
_____

JAMES BAILEY,

v.

TEKTRONIX INC, an Oregon Corporation,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1:21-cv-01268)
District Judge: Honorable Gregory B. Williams
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 6, 2025

Before: RESTREPO, MONTGOMERY-REEVES, and SCIRICA, *Circuit Judges.*

(Opinion filed: May 8, 2025)
_____

OPINION[*]
_____

MONTGOMERY-REEVES, *Circuit Judge.*

This appeal concerns the interpretation of a single contractual provision. For the

reasons below, we will affirm the District Court's judgment.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

# I.    BACKGROUND

James Bailey owned a technology company, Initial State Technologies ("IST"). IST specialized in helping devices send data to a cloud or internet platform. Tektronix was interested in acquiring IST, and in January 2018, contracted with Bailey to do so (the "Merger Agreement").

At the same time, Bailey and Tektronix signed a "retention holdback agreement" (the "Holdback Agreement," collectively with the Merger Agreement, the "Agreements"). The Holdback Agreement entitled Bailey to up to $800,000 if he: (1) stayed employed by Tektronix through December 31, 2020; and (2) reached certain revenue goals relating to Tektronix software sales. The Holdback Agreement defined "revenue" as:

> [E]ach dollar of gross revenue in excess of $6,000,000 (but, for the avoidance of doubt, less than or equal to $10,000,000) generated during 2020 by any member of [Tektronix] or with respect to any software that contains any of the intellectual property owned by [IST] as of the Closing Date.

J.A. 98. The language "with respect to any software that contains any of the [IP] owned by" IST (the "Revenue Language") is the focal point of this appeal.

After the merger, Bailey went to work for Tektronix. Tektronix asked him to develop a software module, the Marshall Module,[1] for incorporation into a Tektronix

---

[1] Bailey, at trial, described the Marshall Module as a "software module that was written in . . . Python that could be inserted into" Tektronix's oscilloscopes. J.A. 407. Python is a computer programming language. *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 336 n.5 (3d Cir. 2022).

product: oscilloscopes.[2]  Between November 2020 and December 2020, the Marshall Module was enabled, integrated into Tektronix's oscilloscopes, and had certain "links or calls" to IST's intellectual property.[3]  J.A. 301.

In January 2021, Bailey sought $800,000 from Tektronix, which he believed he was owed under the Holdback Agreement for meeting his targets relating to "software." Tektronix rejected Bailey's request, and this litigation ensued.  After a bench trial, the court found that Bailey was entitled to the $800,000 under the Holdback Agreement, holding "revenue from or with respect to any software . . . plainly refer[s] to the sale of oscilloscopes incorporating" IST's IP through the Marshall Module.  J.A. 33.

## II.    DISCUSSION[4]

On appeal, Tektronix argues that the District Court erred by: (1) concluding that Bailey offered a reasonable interpretation of the Revenue Language; and (2) holding in favor of Bailey's Revenue Language interpretation after reviewing the extrinsic evidence. We disagree.

---

[2] "An oscilloscope is an instrument that graphically displays electrical voltage signals as a function of time."  Opening Br. 4.

[3] In 2020, revenue from the sale of oscilloscopes that had links or calls to IST's intellectual property through the Marshall Module exceeded $10,000,000.  Software revenue from the sale of subscriptions or licenses to software that contained IST's intellectual property but was not related to the sale of oscilloscopes was below $6,000,000.

[4]  The District Court had jurisdiction over this case under 28 U.S.C. § 1332.  We have jurisdiction over this appeal under 28 U.S.C. § 1291.

**A. The District Court's Revenue Language Interpretation** [5]

"Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party." *Terrell v. Kiromatic Biopharma, Inc.*, No. 131, 2024, ___ A.3d ___, 2025 WL 249073, at *3 (Del. Jan. 21, 2025) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)). "When the contract is clear and unambiguous, [Delaware courts] give effect to the plain-meaning of the contract's terms and provisions." *Osborn*, 991 A.2d at 1159–60. An "[a]mbiguity exists 'when the provisions in controversy are reasonably or fairly susceptible of different interpretations.'" *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) (quoting *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)); *see also Osborn*, 991 A.2d at 1160 ("[W]hen [a court] may reasonably ascribe multiple and different interpretations to a contract, we will find that the contract is ambiguous.").

Tektronix contends that the only reasonable interpretation of the Revenue Language is that "revenue must be tied to the sale or license of software—whether that be subscription revenue or technical support relating to use of the cloud-based software platform" ("Direct Software Sales"). J.A. 8. Tektronix argues that the Revenue

---

[5] We review de novo a district court's decision to grant a motion to dismiss. *Kalu v. Spaulding*, 113 F.4th 311, 324 (3d Cir. 2024) (citing *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020)). "[O]n appeal from a bench trial, our court reviews a district court's findings of fact for clear error and its conclusions of law de novo." *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs.*, 785 F.3d 96, 100 (3d Cir. 2015) (quoting *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282–83 (3d Cir. 2014)).

Language cannot reasonably include the sale of hardware that contained IST's intellectual property ("Indirect Software Sales"). *See id.* Its reasoning is simple; hardware and software are two different words with two different meanings. Commonsense tells us that is true. But that simple distinction is not dispositive; instead, we must analyze all the words in the Revenue Language.

Four words in the Revenue Language—"with respect to any"—dispose of any notion that Tektronix's Direct Software Sales interpretation is unambiguously correct. As the District Court correctly concluded, "with respect to" means "with reference to" or "insofar as concerns" or "as regards." J.A. 10. And, as the District Court alluded to in passing, "any" carries great weight;[6] it is defined as "one or some indiscriminately of whatever kind" or as "used to indicate one selected without restriction." *Any*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/any (last accessed March 2025). As "with respect to any" precedes both "software" and "intellectual property," a simple construction suggests that "with respect to any software" means "insofar as it concerns any software, of whatever kind" or "as regards any software, without restriction."

With these definitions in mind, Tektronix's limiting interpretation of the Revenue Language ignores the parties' expansive inclusion of "with respect to any" in the Revenue Language. *In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56 (Del. 2019) ("[W]e will give each provision and term effect, so as not to

---

[6] J.A. 9 ("The combination of 'with respect to' and 'any' . . . suggests that the parties intended to give 'with respect to' a broader scope when they add 'any.'").

render any part of the contract mere surplusage." (quoting *Osborn*, 991 A.2d at 1159)).

Further, Tektronix ignores the fact that software within hardware is still "software." As such, the District Court did not err in concluding that Bailey's interpretation was reasonable.[7] Thus, we will affirm the District Court's motion to dismiss order.[8]

**B.      The District Court's Post-Trial Holding**

After trial, the District Court held that extrinsic evidence confirmed Bailey's interpretation of the Revenue Language was the only objectively reasonable interpretation. To reverse, we must conclude that the District Court's findings regarding the evidence were "completely devoid of a credible evidentiary basis" or that they bore "no rational relationship to the supporting data." *Bedrosian v. U.S. Dep't of Treasury, Internal Revenue Serv.*, 42 F.4th 174, 180 (3d Cir. 2022) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005)). We cannot do so.

The District Court found at trial, citing to record evidence, that: (1) "A customer of IST's would use its technology by implementing [IST's intellectual property] in the software of whatever device the customer manufactured . . . so that the device could 'talk' to IST's internet service," J.A. 21; (2) Tektronix was interested in IST, in part, so

---

[7] Tektronix challenges the District Court's post-trial holding that Bailey offered a reasonable interpretation of the Revenue Language. This challenge fails for the same reasons.

[8] We also reject Tektronix's argument that the Agreements' commercial context and purpose favor its interpretation of the Revenue Language. Contrary to Tektronix's assertions, we have seen nothing to suggest that Bailey's interpretation of the Revenue Language negates the value of the Agreements for Tektronix.

that it could include IST's intellectual property in its oscilloscopes; (3) "oscilloscopes have software integrated into them that the user interfaces with to see . . . signals and analyze them," J.A. 21–22; (4) "[d]uring negotiations between the companies, Tektronix's oscilloscopes did not have the capability to communicate with the cloud and [Tektronix] specifically informed [Bailey] that [it] wanted IST to be the epicenter of the cloud technology initiatives for Tektronix," J.A. 22; (5) in 2020, Bailey, as a Tektronix employee, began developing the Marshall Module; (6) IST's intellectual property was "included in the Marshall Module that was [then] included in Tektronix's oscilloscopes," J.A. 27; and (7) once the Marshall Module was incorporated into the oscilloscopes' existing software in 2020, revenue per month for oscilloscope sales doubled from $10 million to $20 million by year's end.

Taking these factual findings together, coupled with the express language of the Agreements, the District Court concluded it would be unreasonable to construe the Revenue Language as depriving Bailey of $800,000 for the work he completed on the Marshall Module, which was directly integrated into Tektronix's oscilloscopes by the end of 2020 and included IST's intellectual property. The District Court's findings, which are supported by the record, were not clearly erroneous.

Nor did the District Court clearly err in finding that Tektronix's evidence did not demand a different result. To this end, the District Court found that: (1) "[a]t no time did Tektronix ever attempt to limit the definition of [r]evenue to" Direct Software Sales; instead, Tektronix chose to expansively define software through use of the phrase "any software," suggesting that revenue through Indirect Software Sales was contemplated,

7

J.A. 26; (2) there is no evidence in the record that the parties ever discussed limiting the definition of "software" revenue to only include revenue earned through Direct Software Sales; (3) similarly, there was never any discussion between the parties of excluding the sale of oscilloscopes "that contained software which included IST's [intellectual property]," J.A. 27; and (4) "[m]ost importantly, [the Revenue Language] reflects" the fact that no discussions occurred between the parties to limit "software" revenue to Direct Software Sales because the "[Revenue L]anguage [itself] incorporates no . . . limiting language" like that which Tektronix contends it should be understood to include, J.A. 27.[9]

On the above factual findings, the District Court did not clearly err in concluding that Bailey's interpretation of the Revenue Language was the only objectively reasonable interpretation after consideration of extrinsic evidence. Accordingly, we will affirm the District Court's post-trial decision as well.[10]

III.     CONCLUSION

For the reasons discussed above, we will affirm the District Court's judgment.

---

[9] Tektronix, on appeal, points us to evidence in the record that it contends conclusively supports its position. Opening Br. 45. We are not persuaded because Tektronix's submitted evidence does not go to the ultimate question of how the parties collectively understand "software" under the Holdback Agreement.

[10] We do not reach Tektronix's arguments relating to the forthright negotiator principle because we do not consider Bailey's testimony.